*421
 
 Mr. Justice MILLEE
 

 delivered the opinion of the court.
 

 The act of Congress of May 26th, 1824, declares that “ the mode of proceedings in civil cases in the courts of the United States that now are, or hereafter may be, established in the State of Louisiana, shall be conformable to the laws directing the mode of practice in the District Courts of said State,” and, though there is a provision authorizing the judges of those courts to make alterations necessary to conform the practice to the organization of the Federal courts, this authority is quite limited. This statute, then, in establishing the practice of the State courts as the practice of the Federal courts, however the State laws may modify that practice, and in limiting the power of the Federal courts in that State over their own rules of practice, is a departure-from the otherwise uniform action of Congress on that subject. The mode of procedure in the courts of Louisiana, conforming very nearly to those of the civil law, and both the code of procedure and the civil code of that State differing so widely from the system of common law adopted in all the other States, was the reason of this special purpose of Congress to require the Federal courts in that State to conform to the usages of the local law. This has been frequently noticed in this court.
 

 It is said, however, that the act of 1824 has been repealed or modified by the seventh section of the act of March 2d, 1867.
 

 The strict grammatical construction of the seventh section, relied on by the counsel of the defendant in error to show that the act of 1824 has been repealed or modified, limits its application to such advertisements and publications as must be adjusted by the proper accounting officers, and paid in the maimer now allowed by law in like cases. That this means accounting officers of the Federal treasury and payments by or on behalf of the United States, we cannot doubt. Such language would hardly be used in reference to the costs of court, to be paid by private parties, in a litigation between themselves. Nor would any legislative body use the phrase “ accounting officers” in reference to the clerk
 
 *422
 
 or marshal in taxing the costs of advertisements in the regular course of their duties. It is a phrase well known as referring to the auditors and controllers of the treasury, who pass upon all claims against the government before they can be paid out of the public treasury. The cases then to which the section by its term applies are such publications as the Federal government is concerned in, and for which it may have to pay.
 

 This view is confirmed by the manifest purposes of the act. These are, first to require that the clerk of the House of Representatives should select, in the States lately in insurrection, the newspapers in which such publications should be made as the United States required, instead of the heads of departments and other officers who had heretofore exercised that discretion; secondly, that he should also fix the scale of prices, within a limit prescribed by the act, which the government should be charged for such publications.
 

 Nor is this view affected by the fact that judges of courts and other officers of the court, meaning marshals and clerks, are among those required to make publications in the papers so selected; for in the proceedings of these courts in revenue seizures, confiscations, cotton cases, forfeitures, and the like, many notices are required to be published and are published by these officers, for which the United States pays, and which, before the marshal can get the allowance for it, must be passed upon by the accounting officers.of the treasury.
 

 Whether we look, then, to the language of this seventh section, or to the manifest purpose and object of the act, we are constrained to limit its application to such publications as the Federal government may make on her own account, and for wdiich payment is to be made out of the Federal treasury.
 

 If the language of the section were much more favorable than it is to the construction contended for by the defendant in error, we should pause long before concluding that Congress had reversed in this instance its uniform policy of conforming the modes of proceeding in the Federal courts to those of the States, and had repealed pro
 
 tanto
 
 the act of 1824,
 
 *423
 
 which laid down that as the law for Louisiana with an express limitation in the power of. the court to modify it, aud that it had invaded the rule long received as an axiom, that the descent, alienation, and transfer of real estate was governed rightfully by the law of the State wherein it lay. We are quite satisfied that Congress had no such intent in passing the act of 1867.
 

 The effort to support the course of the marshal, by showing that he acted under a rule of the court, is hardly worth consideration. Tire mere circumstance that for a few months that officer, aeting under the construction of the act of 1867, which we have just shown to be erroneous, had advertised only in the newspapers selected by the clerk of the House of Representatives, did not constitute a rule of the court.
 

 We are of opinion that the sale should have been set aside for want of the advertisement in the parish where the land lay. The judgment of the Circuit Court affirming the sale is, therefore, reversed, aud the case remanded with directions to proceed
 

 In conformity to this opinion.