## NATHAN S. GIBBS & wife *vs.* NATHANIEL F. AMES.

Plymouth. October 19. — 22, 1875. AMES & MORTON, JJ., absent.

In an action of tort by a husband and his wife for a malicious prosecution of the wife, it appeared that the defendant made a complaint on oath before a trial justice, accusing the wife of larceny, and the husband of inciting and commanding the wife to the crime, and praying for the arrest of the husband; that the warrant was for the arrest of the husband only ; that both were brought from another state on a requisition from the governor of this Commonwealth, and were arrested and brought before the justice ; that the wife was required to plead to the complaint, to answer further thereto at a subsequent day, and to give surety for her appearance for that purpose, and in default of bail was committed to jail, and on the day fixed for the trial was discharged, being found by the magistrate to be not guilty. The jury were instructed that the making of the complaint did not of itself render the defendant liable for the subsequent arrest and imprisonment of the wife; but that if he intended and participated in her arrest and imprisonment upon the complaint, the requisition or the warrant, he was, if and so far as her arrest and imprisonment were caused by such acts of his, done with malice and without probable cause, liable in damages therefor in this action. *Held*, that the action could be maintained as for malicious prosecution, and that the instructions were correct.

TORT. The declaration alleged that the defendant falsely, maliciously, wilfully and wrongfully prosecuted the female plaintiff, and falsely charged her with the crime of larceny of bonds, to the value of six thousand dollars, and of other personal property, the property of the defendant; and wrongfully and maliciously removed her by force from the State of Maine, and caused her to be removed, she being at the time about to be confined in childbed, and wrongfully imprisoned, and caused her to be imprisoned for more than ten days, expecting every moment to be confined in childbirth, and the defendant well knowing that said charge was false; whereby the female plaintiff suffered great damage in anxiety of mind, in helplessness and destitution, and was otherwise greatly wronged and damaged.

The answer contained a general denial, and alleged that whatever the plaintiffs may show that the defendant did in the premises, he did acting in good faith, upon probable cause that the female plaintiff had done and was guilty of all she was charged by him with doing, and acting under the advice of counsel learned in the law; and that the plaintiffs have no cause of action against him in the premises.

Trial in this court before *Gray*, C. J., who, after verdict, reported the case for the determination of the full court in substance as follows:

The plaintiffs' counsel contended that this action could be maintained not only as an action for malicious prosecution, but also, under the present declaration, as an action for false imprisonment; but it was ruled that the plaintiffs could not recover under this declaration without proving that the defendant had prosecuted the female plaintiff maliciously and without probable cause.

The evidence introduced tended to prove the following facts: The defendant, with his wife, resided at Mattapoisett. The female plaintiff was their daughter, and resided with her husband at New Bedford. On October 27, 1873, in the absence of the defendant, the daughter came to his house, and, while she was there, the defendant's wife took from the house $6000 of bonds belonging to him, and some furniture, part of which belonged to him and part to her, went with her daughter to the house of the latter in New Bedford, there left the furniture, thence went with

her daughter, and carrying the bonds with them, to New York, and afterwards joined the daughter's husband at Augusta, in the State of Maine, where he had been from before the time of said taking, and they then took up their residence together there. The defendant, upon discovering this, went to Augusta, and after some conversation with his wife and son in law returned to Massachusetts to get a requisition from the governor against the daughter and her husband for larceny of the bonds and furniture; took advice of counsel here, with a view to arrest both; applied to Jonas R. Perkins, a trial justice of this county, for a warrant against both; signed a complaint drawn up by the justice, (a copy of which, together with the warrant issued thereon, and the record of the trial justice, was made part of the report, and the substance of which is printed in the margin; *) took the com-

---

* The complaint, dated February 25, 1874, alleged that Sophia E. Gibbs on October 27, 1873, feloniously took and carried away in the daytime certain personal property of the complainant of the value of $6000; and that Nathan S. Gibbs, before the felony and larceny were committed, incited, moved, procured, counseled, hired and commanded said Sophia to commit the said felony and larceny. The complaint concluded as follows : " He therefore prays that the said Nathan S. Gibbs may be apprehended and held to answer to said complaint, and dealt with relative to the same as law and justice may require." The warrant issued on this complaint directed the arrest of Nathan S. Gibbs. The record of the trial justice was as follows :

" On complaint of Nathaniel F. Ames vs. Nathan S. Gibbs. Plymouth, ss. March 3, 1874. By virtue of the within warrant, the respondents this day brought before me, a trial justice for said county, and the within complaint is read to them ; and being asked whether they are guilty or not guilty of the offence therein charged against them, they say that they are not guilty. Continued to March 11th, Plymouth, in said county, at eleven o'clock, A. M. Ordered to give surety in $6000; in default, were committed. And on said eleventh day of March, after due and full consideration, it is considered by me that they are not guilty of said charge. It is therefore ordered that they be discharged."

The mittimus was as follows :

" Commonwealth of Massachusetts. Plymouth, ss. To the Keeper of the Commonwealth's Jail, in Plymouth, in the County of Plymouth. Greeting : You are hereby required to receive into your custody, for safe keeping, the bodies of Sophia E. Gibbs and Nathan S. Gibbs, who stand before me, charged by Nathaniel F. Ames with the crime of larceny, and who are remanded for further examination, to be had before me, at office in Plymouth, in said county of Plymouth, on Wednesday, the eleventh day of March, instant, at eleven

plaint and warrant to the office of the state police in Boston; there signed an affidavit, setting forth substantially the facts which now appear by the evidence, and also that he had made a complaint before a trial justice, charging both Nathan S. and Sophia E. Gibbs with stealing said furniture and bonds, and had obtained a warrant for their arrest; went to the attorney general and stated his case to him, and obtained from him a letter to the governor, advising that on this complaint and affidavit a requisition might issue for both plaintiffs; had an interview with the governor, and obtained from him a requisition for both; delivered it to two officers of the state police; told them that his object was to arrest both plaintiffs; went with the officers to Augusta, and there, acting in concert with them, obtained a warrant from the governor of Maine to the city marshal of Augusta for the arrest of both, and procured their arrest, and arranged with the officers that the hearing here upon said complaint should be postponed for a week or ten days, until he returned from Maine.

The officers, having both plaintiffs in their custody, left Augusta and returned to Massachusetts, and on March 3, 1874, lodged them in jail at Plymouth, and directed another state constable to take them before a trial justice, and because the case was not fully prepared, and the witnesses not all ready, to get a postponement of the case until March 11; and this officer, acting under these directions, brought them before a trial justice, represented to him that the government was not ready to proceed, and procured from him a postponement of the case until March 11, an order that they should recognize for their appearance at that time, and upon their failure to furnish sureties, a warrant, for their commitment to jail in Plymouth, where they were detained until that day.

---

o'clock, A. M., unless they shall before recognize to the Commonwealth, with sufficient sureties, in the sum of six thousand dollars each, for their personal appearance at said time and place, and for the purpose above mentioned. Witness my hand and seal, this third day of March, A. D. 1874.

"Otis W. Soule, Trial Justice." [Seal.]

On this was the following return : "Plymouth. ss. Plymouth, March 3, 1874. In obedience to the within warrant, I have conveyed the within named Sophia E. and Nathan S. Gibbs to the jail in Plymouth, in said county, and delivered them to the keeper thereof, with an attested copy of this warrant

"Jas. B. Collingwood, Constable of the Commonwealth."

The defendant remained with his wife for a week in the plain-tiffs' house at Augusta, and on March 9 returned· to Massachu-setts, saying at that time, to a witness who testified at the trial of this action, that he had got his daughter and her husband both in jail, and could keep them there till he got his bonds.

He arrived at Plymouth on the same day, and took no steps to bail or discharge them until March 11, when he applied to the trial justice for their discharge, and being examined upon oath before him, said that he had his daughter arrested and imprisoned for the purpose of getting into her house and seeing his wife, and that his object was to get the plaintiffs away so as to have access to his wife, and get the bonds, and that he was now satisfied that his daughter and her husband had nothing to do with taking the bonds and furniture, and he wished " to lift the thing " from her. Both plaintiffs were therefore discharged by the justice, and im-mediately brought this action.

No complaint was made or warrant issued against the female plaintiff otherwise than as above stated.

The defendant contended, and requested the judge to instruct the jury, that there had been no prosecution of the female plain-tiff, for or by reason of which this action could be maintained ; and that if this action could be maintained at all, he could not be held liable for any damages resulting to her from the imprison-ment from March 3 to March 11.

The jury were instructed that the making of the complaint to the trial justice did not of itself render this defendant liable for the subsequent arrest and imprisonment of the female plaintiff ; but that if he intended and participated in her arrest and impris-onment upon the complaint, the requisition or the warrant, he was, if, and so far as, her arrest and imprisonment were caused · by such acts of his, done with malice and without probable cause, liable in damages therefor in this action.

The jury returned a verdict for the plaintiffs. Judgment was to be rendered on the verdict, or judgment for the defendant, or a new trial ordered, as, in the opinion of the full court, law and justice might require.

G. Marston, for the defendant. 1. To maintain this action, it must appear that the female plaintiff was prosecuted by the de-fendant. The word " prosecuted " is technical, and means only

the use of legal process against the party, as a party defendant, which must be at an end, and is to be proved by copies of the record. 2 Greenl. Ev. §§ 449, 450, 452. A prosecution can never be said to be at an end if it never was begun, and the proceedings cannot be shown from a record if there never was any proceeding which resulted in a judgment and a record thereof. " There is no similitude or analogy between an action of trespass, or false imprisonment, and this kind of action. An action of trespass is for the defendant's having done that, which, upon the stating of it, is manifestly illegal. This kind of action is for a prosecution which, upon the stating of it, is manifestly legal." *Johnstone* v. *Sutton,* 1 T. R. 510, 544.

2. There never was any prosecution of the female plaintiff; there was no complaint against her in which process was sought against her, and no warrant was ever issued against her. She never was arrested on any warrant issued upon any complaint against her. The complaint only charges the husband with the crime, and prays process only against the husband. The warrant is only for the arrest of the husband; and so the prosecution is only of the husband. It ought to appear that the plaintiff " was acquitted of the charge." 2 Greenl. Ev. § 452. That is not possible in a case where no process has been issued upon which she could have been put upon trial. If the defendant is liable at all, it is for false imprisonment, or trespass, and not in this action.

3. The commitment of the wife by the trial justice was wholly illegal, and was in no sense a legal process under the complaint and warrant which were before the trial justice. The defendant cannot be held liable for damages resulting from an unauthorized and extra-judicial act of the trial justice.

*C. G. Davis,* for the plaintiffs.

WELLS, J. The female plaintiff was brought before a trial justice upon a criminal charge. She was required to plead to the complaint, to answer further thereto at a subsequent day, and to give surety in $6000 for her appearance for that purpose. In default of bail she was committed by order of the magistrate, and a mittimus therefor in due form was issued. Upon the day fixed for the trial she was discharged, the magistrate finding and adjudging her to be " not guilty of said charge." All this appears from the records of the trial justice.

This was a sufficient prosecution and acquittal therefrom to furnish a foundation for the common action for malicious prosecution, notwithstanding any insufficiency of the complaint, or defect of process by which she was brought before the court, or want of jurisdiction of the magistrate arising from such defect. 2 Greenl. Ev. §§ 449, 452, and cases cited. 1 Am. Lead. Cas. (4th ed.) 215, 216, notes to *Munns* v. *Dupont.* *O'Brien* v. *Barry,* 106 Mass. 300, 304. *Cardival* v. *Smith,* 109 Mass. 158. The magistrate had jurisdiction of the subject matter of the complaint, which was not the case in *Bixby* v. *Brundige,* 2 Gray, 129, and *Whiting* v. *Johnson,* 6 Gray, 246.

Ordinarily the preferring of a complaint, if done maliciously and without probable cause, would be sufficient to charge the complainant with liability for the prosecution to which it gave rise; because that is its natural and legitimate sequence, and its presumed purpose. But the form of this complaint is such that, as it prayed for process only against the other person named as an offender, some other evidence was rightly required to charge the defendant with an intention to prosecute the female plaintiff. The instructions required the jury to find that the defendant intended to cause, and participated in, her subsequent arrest. That fact, being found, involves him in responsibility for the subsequent proceedings as its natural and ordinary sequence, just as much as if there had been a proper complaint and warrant to justify the arrest, as he asserted in his affidavit that there were. 2 Greenl. Ev. § 450. *Judgment on the verdict.*